# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5308 | **DATE** | 10/16/2002 |
| **CASE TITLE** | Pinto vs. United States of America | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting government's motion for summary judgment and denying plaintiff's motion for summary judgment. Judgment is, therefore, entered in favor of defendant and against plaintiff in the amount of $39,464.05. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 17 2002 date docketed | |
| | Notified counsel by telephone. | | | 22 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/16/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**OCT 1 7 2002**

RICHARD PINTO,                              )
                                            )
            Plaintiff,                      )
                                            )
     v.                                     )   No. 01 C 5308
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
            Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Richard Pinto was the owner of Pinto Brothers Construction, Inc. ("Pinto Brothers"). Pinto Brothers failed to pay employment taxes out of money withheld from employee wages and was assessed hundreds of thousands of dollars in trust fund tax penalties by the Internal Revenue Service ("IRS"). Richard Pinto was assessed personal liability as a "responsible person" for the trust fund tax penalty under 26 U.S.C. § 6672 in the amount of $214,702.77. Mr. Pinto is also the 60 percent owner of a company called Pinto Construction Group, Inc. ("Pinto Construction"), which has made payments on the trust fund liability of Pinto Brothers. Believing that he has overpaid on his individual trust fund liability, Mr. Pinto sues the United States for an accounting and a refund of an unspecified amount. The United States filed an answer and counterclaim for a trust fund liability balance of $39,464.11. The United States moves for summary judgment, and Mr. Pinto filed a cross-motion for summary judgment. I grant the government's motion and deny Mr. Pinto's motion.

I.

Both the government and Mr. Pinto move for summary judgment, which is proper only when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, I give separate consideration to the evidence of each party and the inferences to be drawn from it. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

However, I dispose of Mr. Pinto's motion without reaching its merits. Local General Rule 56.1(a) requires any party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." The statement of material facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." *Id.* Failure to comply with the local rules is not

merely a "harmless technicality," but can be a "fatal" mistake. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994). The Seventh Circuit has repeatedly upheld the strict application of Local Rule 56.1. *See Servin v. GATX Logistics, Inc.*, 187 F.R.D. 561, 562-63 (N.D. Ill. 1999) (Gettleman, J.) (citing cases).

Although Mr. Pinto includes a statement of facts in his motion that consists of numbered paragraphs, and he attaches evidence to it, he does not provide any citations to the record in the statement of facts. The Rule 56.1(a) statement is a "roadmap" to these facts, without which I "should not have to proceed further, regardless of how readily [I] might be able to distill the relevant information from the record on [my] own." *Waldridge*, 24 F.3d at 923. Mr. Pinto's statement of facts does not comply with Rule 56.1, so his motion is denied. *See Servin*, 187 F.R.D. at 563; *see also Prudential Ins. Co. of America v. Tomaszek*, No. 90 C 6892, 1992 WL 26734, at *2 (N.D. Ill. Feb. 7, 1992) (Shadur, J.) (noting that predecessor to Rule 56.1(a) "expressly permits the *denial* of a summary judgment motion for non-compliance with its terms").

II.

Employers are required to withhold federal taxes from employee wages in trust for the United States government. 26 U.S.C. §§ 3102(a), 3402(a). These taxes are commonly referred to as "trust fund taxes." *See United States v. Energy Resources Co., Inc.*, 495

3

U.S. 545, 546-47 (1990). If an employer fails to pay trust fund taxes, § 6672 of the Internal Revenue Code, known as the "responsible person penalty provision," see *Buffalow v. United States*, 109 F.3d 570, 573 (9th Cir. 1997), allows the government to collect a sum equal to the amount owed "directly from the officers or employees of the employer who are responsible for collecting the tax." *Energy Resources*, 495 U.S. at 547; 26 U.S.C. § 6672(a).

Richard Pinto was the president and 100 percent owner of Pinto Brothers. Pinto Brothers failed to pay trust fund taxes for, *inter alia*, the second quarter of 1991 and all four quarters of 1994. When Pinto Brothers went out of business, it assigned its assets for the benefit of its creditors. Eight days before the scheduled sale of assets in June 1994, Mr. Pinto formed a new business, Pinto Construction, of which he is a 60 percent owner and his wife, Doris Pinto, is a 40 percent owner. The government says that the assets of Pinto Brothers were assigned to Pinto Construction, based on a statement of intent to assign the assets to Mrs. Pinto in an IRS report. Mr. Pinto denies that Pinto Construction is the assignee of Pinto Brothers (though he provides no evidence to support the denial),[1] but any dispute is immaterial for reasons I explain below.

On August 6, 1995, Mr. Pinto was assessed personal liability

---

[1] The failure to point to evidence in the record to support a denial of the defendant's statement of fact is deemed an admission. *See Waldridge*, 24 F.3d at 922; Local Rule 56.1(b)(3)(B).

4

in the amount of $214,702.77[2] for the trust fund tax penalties of Pinto Brothers from the third and fourth quarters of 1993 as a "responsible person" under § 6672. Beginning in August 1994, Pinto Construction made monthly payments of $5,000 toward the trust fund tax liability of Pinto Brothers. Each check from Pinto Construction bore the following endorsement:

> We hereby tender payment of $5,000.00 and specifically demand that such funds be applied to the trust fund tax liability of Pinto Bros. Construction, Inc., FEIN #36-3641466.

Def. Ex. 5. None of the $5,000 payments was designated for a particular quarter of trust fund tax liability. Pinto Construction made a total of thirty-seven monthly payments of $5,000.[3] The IRS allocated these payments among all four quarters of tax liability for 1993. Mr. Pinto's civil penalty account, for his personal liability, received cross-reference credit for the twenty-nine monthly payments made after his assessment on April 6, 1995. A total of $124,500 of the monthly payments were originally allocated

---

[2] The original notice of proposed assessment was for $223,539.58 —$8,836.81 for the second quarter of 1991, $137,043.18 for the third quarter of 1994, and $77,659.59 (the government mistakenly transcribes this amount as $77,959.59 in its statement of facts, ¶ 1) for the fourth quarter of 1994—but the 1991 penalty was immediately abated because it had been paid in full. See Gov't Ex. 1.

[3] The chart attached to the government's motion for summary judgment showed only thirty-six payments, but that appears to have been the result of a photocopying error that cut off the last line of the page and omitted check # 11152. In reply, the government submits a complete copy of the chart, which shows thirty-seven payments and accounts for check # 11152.

to the third and fourth quarters of 1993. Def. Ex. 5, ¶ 14.

Mr. Pinto also made payments personally, both voluntarily and in response to a levy, against his civil liability in the amount of $143,238.66. Def. Ex. 5, ¶ 10. The government does not say whether Mr. Pinto specifically designated any of his individual payments, but all of them were allocated to the trust fund tax liability for the fourth quarter of 1993, and Mr. Pinto does not object to this allocation.

As a result of the individual payments by Mr. Pinto and the cross-referenced payments by Pinto Construction, the balance of Mr. Pinto's individual civil liability was reduced to zero. Id. ¶ 15. Mr. Pinto claims that he has overpaid his personal civil liability and seeks a refund. The government admits that, when the IRS assessed the $214,702.77 penalty on Mr. Pinto on April 6, 1995, it failed to account for $32,000 of payments toward the liability for the third and fourth quarters of 1993 made by Pinto Construction before the individual assessment. Thus the government says that the assessment of personal liability on April 6, 1995, ought to have been for $182,702.71.[4] The total payments by Mr. Pinto (his individual payments and the cross-referenced payments as originally allocated) amount to $267,738.66—$53,035.89 more than the original

---

[4] Actually, the assessment ought to have been for $182,702.77, or $32,000 less than $214,702.77, which was the original amount assessed. Because I draw inferences against the government on its motion, I give Mr. Pinto the benefit of the $.06 discrepancy.

6

assessment of $214,702.77 and $85,035.95 more than the corrected assessment of $182,702.71.

Pinto Construction stopped making the $5,000 monthly payments after Mr. Pinto's individual civil liability was reduced to zero. The government claims that it is entitled now to reallocate the undesignated monthly payments to Pinto Brothers' trust fund liability to the first two quarters of 1993, for which Mr. Pinto was not assessed a civil penalty, to maximize the collectibility of the trust fund tax liability. By the government's calculations, then, if the $124,500 originally allocated to the third and fourth quarters of 1993 is reallocated to the first and second quarters of 1993, the total payments against Mr. Pinto's individual civil liability are $143,238.66, leaving a $39,464.05[5] shortfall in Mr. Pinto's civil liability for the third and fourth quarters of 1993.

### III.

Section 6672 expresses a congressional intent to allow collection of trust fund taxes, and the IRS has a judicially sanctioned policy of maximizing collection. *See United States v. Schroeder*, 900 F.2d 1144, 1146 n.1 (7th Cir. 1990). When a taxpayer submits a voluntary payment, he may designate the particular liability to which the payment should be applied, *Davis v. United States*, 961 F.2d 867, 878 (9th Cir. 1992), but when a taxpayer does

---

[5] The government claims that the shortfall is $39,464.11, but as I noted above, I give Mr. Pinto the benefit of the government's error in calculation.

7

not designate the particular liability, the IRS may allocate the payment as it sees fit, *id.*; *Schroeder*, 900 F.2d at 1149; *Sotir v. United States*, 978 F.2d 29, 30 (1st Cir. 1992).

In *Davis*, the plaintiff was the president and major shareholder of a company that owed both trust fund taxes and non-trust fund taxes. The company began to pay the delinquent taxes on an installment basis, but did not designate to which quarter of liability the payments should apply. 961 F.2d at 870. Davis was assessed an individual civil penalty for the trust fund taxes, but prior to the assessment, the IRS discovered that the company lacked any assets to satisfy the non-trust fund liability. *Id.* The IRS reallocated funds that were originally applied to the trust fund taxes to cover the company's non-trust fund liability. *Id.* The effect of the reallocation was to increase the amount of the trust fund civil penalty assessed against Davis from $3,000 to nearly $19,000. *Id.* at 871.

The Ninth Circuit held that the reallocation was permissible, holding that "straitjacketing the IRS into its initial allocation decisions would be inconsistent with the goal of maximizing tax revenues. . . . Adjustments of allocations should be permitted as new information comes to the IRS." 961 F.2d at 879. The court noted that Davis could not show that he was injured by the re-allocation because, "had the IRS originally allocated the payments along their current lines, his penalty would have been identical to what it is

now. The reallocation thus has not increased his penalty beyond that for which he was eligible in the first instance." *Id.* Finally, the court held that Davis could not demonstrate detrimental reliance because he waived any interest in how the payments were allocated by failing to designate them. *Id.* In a similar case, another court has held that the IRS may subsequently reallocate undesignated payments to a different quarter even though it has the effect of increasing the individual trust fund liability of a § 6672 "responsible person." *See Thomas v. United States*, No. 96-1488, 1998 WL 892617, at *4-*6 (C.D. Ill. Sept. 16, 1998) (Mihm, C.J.). In *Thomas*, a third party made payments against a corporation's trust fund liability, but did not designate to which quarters the payments should apply. *Id.* at *6. The court held that because "the solvency of the debtors and the total tax liability changed in the present case, the IRS should have been free to alter its initial allocation to maximize its revenues and increase the collectibility of [the § 6672 responsible person's] debts." *Id.* Because a third party made the payments, the court held that it was reasonable to reallocate them to quarters in which the third party did not share liability with the § 6672 responsible person. *Id.*

Mr. Pinto attempts to distinguish *Davis* and *Thomas* by claiming that Pinto Construction was not an assignee of Pinto Brothers. He does not support this claim with any evidence, but any dispute on this question is immaterial. The issue in both *Thomas* and *Davis* was

9

the reallocation of undesignated payments made against a company's liability generally to increase the amount that could be collected from a § 6672 responsible person; the identity of the payor was irrelevant. Mr. Pinto also argues that there was no new information about collectibility here, as there was in *Thomas* and *Davis*. However, Pinto Construction stopped making monthly payments against the trust fund liability of Pinto Brothers once Mr. Pinto believed that his personal liability was extinguished; even construing this fact most favorably to Mr. Pinto, this is new information about the ability to collect on Pinto Brothers' liability for the first two quarters of 1993, for which Mr. Pinto did not share § 6672 individual liability.

Relying in part on a provision of the Internal Revenue Manual, Mr. Pinto argues that the IRS ought to have allocated Pinto Brothers' federal tax deposits "pro rata" between trust fund tax liability and non-trust fund tax liability, and that he would have been assessed approximately $30,000 less in trust fund liability if the IRS had done so. There is no evidence in the record that any payments or federal tax deposits were applied to any non-trust fund liability. In fact, there is no evidence of federal tax deposits at all, and Mr. Pinto admits that all thirty-seven undesignated monthly payments were allocated to the trust fund liability of Pinto Brothers. *See* Gov't Ex. 5, ¶ 16 (Pinto Brothers' first and second quarter liability for 1993 was trust fund liability). Even

if there had been such an allocation, there is no support for *mandatory* pro-rata apportionment. *Cf. Neier v. United States*, 127 B.R. 669, 673 (D. Kan. 1991) (noting that the parties agreed that payroll tax deposits should be allocated proportionally to trust fund and non-trust fund taxes); *Notaro v. United States*, No. 92 C 0429, 1992 WL 396444, at *2 (N.D. Ill. Dec. 23, 1992) (Hart, J.) ("[P]rovisions of the IRM [Internal Revenue Manual] are not enforceable against the government."). Finally, Mr. Pinto provides no documentation to support his claim that his assessment would have been lower by $30,000. Nonetheless, the government admits that its original assessment of $214,702.77 was off by $32,000 because it failed to account for payments by Pinto Construction prior to the date of the assessment against Mr. Pinto. Mr. Pinto admits that $182,702.71 is the proper adjusted calculation. *See* Pl's Reply at 9.

Mr. Pinto acknowledges that the government has broad power to reallocate undesignated payments, and he admits that the monthly $5,000 payments by Pinto Construction were undesignated. He argues, however, that the IRS could not reallocate payments *after* Mr. Pinto had paid his personal liability in full and the tax lien against him had been released. In a footnote in *Davis*, the Ninth Circuit stated that it "need not decide whether limits on the IRS's reallocation authority would be appropriate where the taxpayer's voluntary payment completely satisfies an existing tax liability,

11

as opposed to simply reducing it." *Davis*, 961 F.2d at 879 n.4 (citing *Kelley v. United States*, 30 F.2d 193 (9th Cir. 1929); *Brookhurst, Inc. v. United States*, 931 F.2d 554 (9th Cir. 1991))[6]. Mr. Pinto argues that this is such a case, and that I must decide the limits of the IRS's reallocation power left open by the Ninth Circuit's footnote. I need not reach the particular question posed by the Ninth Circuit, however, because Mr. Pinto admits that the payments that he made personally against his civil liability were both voluntary *and* involuntary, in response to a levy. *See* Gov't Ex. 5, ¶ 10.

In any event, I do not find that it is beyond the limits of the government's authority to reallocate undesignated payments to allow the reallocation here. First, it is the taxpayer's designation that extinguishes an assessment, not the government's allocation. *See Thomas*, 1998 WL 892617, at *4; *Buffalow*, 109 F.3d at 574. Although Mr. Pinto may have designated the payments he made personally, there is no question that the payments made by Pinto Construction that were cross-referenced to his personal liability

---

[6] Neither case cited by the Ninth Circuit is directly on point here. In *Kelley*, the court said that "[w]hen once paid, a tax is gone, and a refund of the money does not restore it." 30 F.2d at 193. The issue there was whether there was a cause of action in equity for government recovery of an unauthorized refund; the court held that there was not, but held that there was a cause of action at law. *Id.* at 193-194. In *Brookhurst*, the question was "whether the government may *reassess* a taxpayer's tax liability, thus creating a new tax obligation," in order to recover a wrongful refund. 931 F.2d at 556 (emphasis in original).

were not designated to a particular quarter of liability. Mr. Pinto argues that, because Pinto Construction was an S-corporation, in which tax liability "passes through" the corporation to the individual, the payments by Pinto Construction were "in effect, the equivalent of a payment directly from Richard Pinto personally." Pl's Mem. at 8. However, even if the thirty-seven monthly payments by Pinto Construction effectively came out of Mr. Pinto's pocket, they were not clearly directed to his personal liability. Mr. Pinto admits that the endorsement on each check from Pinto Construction directed that the "funds be applied to the trust fund tax liability of Pinto Bros. Construction, Inc., FEIN #36-3641446." The payments did not bear Mr. Pinto's individual Social Security number, which was the number for his personal civil liability account. *Compare* Gov't Ex. 2 (Mr. Pinto's civil liability account, identified by Social Security Number 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) *with* Gov't Ex. 3 and 4 (trust fund liability of Pinto Brothers, identified by Federal Employer Identification Number 36-3641446). Regardless of who made the thirty-seven monthly payments, they were indisputably directed at the liability of Pinto Brothers, not of Mr. Pinto personally. Although the government admits that the balance of Mr. Pinto's personal account was reduced to zero, his personal liability was not extinguished because the payments by Pinto Construction were not designated to satisfy his personal liability.

Second, as in *Davis* and *Thomas*, the reallocation does not affect Mr. Pinto's total personal liability. Because the government could originally have allocated the undesignated payments to the first and second quarters of 1993, for which Mr. Pinto was not liable, Mr. Pinto is not injured by a reallocation now. *See Davis*, 961 F.2d at 879. The total assessment against him is $182,702.71, and he is liable for the entire amount. See 26 U.S.C. § 6672 (allowing for penalty against individual for 100% of employer's trust fund liability). This is true regardless of Mr. Pinto's belief that he had satisfied his personal liability with a combination of personal payments and cross-reference credit for the undesignated payments by Pinto Construction.

Mr. Pinto raises for the first time in reply the argument that he relied detrimentally on the government's representation that he had satisfied his personal liability. Arguments raised for the first time in reply are waived. *See United States v. Matchopatow*, 259 F.3d 847, 851 (7th Cir. 2001). Even if I considered the argument, however, Mr. Pinto comes forward with no evidence that he actually relied to his detriment on the notion that he had paid his personal liability in full. Mr. Pinto waived any interest in the allocation of the monthly payments by Pinto Construction when he failed to designate them for the quarters on which he owed personally. *See Davis*, 961 F.2d at 879. The reallocation is proper.

IV.

Mr. Pinto's motion for summary judgment is DENIED. Even if I had considered it on its merits, I conclude that, even viewing the evidence in the light most favorable to Mr. Pinto, as I have done on the government's motion, he cannot prevail. The government's motion for summary judgment is GRANTED. The original assessment against Mr. Pinto is reduced from $214,702.77 to $182,702.71, and the thirty-seven monthly payments by Pinto Construction have been reallocated to Pinto Brothers' trust fund liability for the first and second quarters of 1993. Mr. Pinto's remaining individual liability for the third and fourth quarters of 1993 is $39,464.05, and judgment is entered for the government in that amount. The motion to strike the affidavit of Cary R. Rosenthal is DENIED as moot.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: October 16, 2002